**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LUIZ C. PECK GARRIDO, on behalf of himself and all others similarly situated, | CLASS ACTION COMPLAINT |
| | JURY TRIAL DEMANDED |
| Plaintiffs, | |
| vs. | **Case No. 1:24-cv-4290** |
| XGIMI TECHNOLOGY INCORPORATED, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Plaintiff Luiz C. Peck Garrido ("Plaintiff") by and through his undersigned counsel, complains of defendant Xgimi Technology Incorporated's ("Xgimi" or "Defendant") conduct and alleges upon information and belief as follows:

**NATURE OF THE CASE**

1.     This consumer class action arises from Xgimi's sale and distribution of misrepresented projectors, including but not limited to the Xgimi Horizon Pro 4K, Horizon 1080P, Elfin, and Halo (the "Class Devices"). Xgimi engaged in a widespread marketing campaign to mislead consumers into believing that the Class Devices had higher lumens rating than they did, while knowing that the devices were incapable of performing as claimed.

2.     Xgimi designed, manufactured, marketed, and sold the Class Devices to consumers across the United States while knowingly misrepresenting a material quality of the Class Devices. At a minimum, the misrepresentation consists of the Class Devices' lumens rating, which is the measurement and description of a projector's light output. The higher the

lumens rating, the brighter the projector's image, and, all else being equal, the more it will likely cost because of the image's visibility amid ambient light.

3.    The lumens rating for a projector is one of the most important and immediately recognizable projector features for consumers, and one that necessarily impacts consumer choice. "Lumens ... can impact the quality of the image projected."[1] In a room where the ambient light is low, "a lower number of lumens may be sufficient to create a bright and clear image."[2] Conversely, projectors in brightly-lit rooms or those with ambient light may require a higher number of lumens to create visible images.[3] Projector industry commentators recommend lumens between 2,000 and 3,500 in moderate light conditions.[4]

4.    Recognizing the importance of projector brightness to consumers, Defendant purposefully and deceptively inflated the brightness specification of the Class Devices. When a competing manufacturer of projectors, Epson, tested the actual brightness of Defendant's projectors, the competitor found that, for every model tested, each Xgimi model tested significantly below its advertised brightness value.

5.    Following a lawsuit and settlement with its competitor, Xgimi agreed to change the standard it used to measure and advertise the lumens capacity of its projectors, to accurately reflect brightness specifications. Unfortunately, Xgimi's converted brightness values were far below what they should have been, had the initial brightness representation been correct to begin with.

---

[1] https://hometheatergeek.com/beginners-guides/do-lumens-matter-for-projectors/ (last visited April 17, 2024)
[2] *Id*.
[3] *Id*.
[4] https://thehometheaterdiy.com/projector-lumens/ (last visited April 17, 2024)

6.    Though Xgimi touted, for example, the Horizon Pro 4K as capable of producing 2200 ANSI Lumens,[5] the lumens rating following Xgimi's settlement now states that the Horizon Pro 4K has a 1500 ISO lumens rating. Indeed, this 1500 ISO value is lower even if one follows the conversion value of ANSI lumens to ISO lumens that Defendant includes on its own website.[6] Following Defendant's conversion of "1 ANSI lumen = 0.8 ISO lumens"[7] yields a result from 2200 ANSI lumens to 1760 ISO lumens, a value much higher than that now displayed. Defendant knew or should have known that the Class Devices could not perform as represented. Despite this knowledge, Xgimi failed to disclose the truth to purchasers of Class Devices and continued to promote false and unsubstantiated claims to attract new purchasers. Defendant unjustly profited on these falsehoods by selling Class Devices and replacement parts and accessories thereto.

7.    Plaintiff and Class members have suffered injuries in fact, incurred damages, and have otherwise been harmed by Defendant's conduct.

8.    Accordingly, Plaintiff seeks redress for Defendant's unlawful conduct. Plaintiff also seeks money damages and equitable relief for Defendant's conduct described herein.

## JURISDICTION AND VENUE

---

[5] ANSI, or the American National Standards Institute, "is a U.S. organization that oversees and facilitates the development of American national standards and international standards." https://www.ansi.org/ (last visited Feb. 20, 2024).
[6] https://us.xgimi.com/blogs/projectors-101/ansi-lumens-vs-iso-lumens-what-are-the-differences (last visited April 17, 2024)
[7] *Id*.

9.      Xgimi Technology Incorporated is headquartered in Chengdu Shi, 1800 Yizhou Ave Middle Section, Wuhou Qu, China, and lists its principal address on the California Secretary of State's website as "440 N WOLFE ROAD 11568 TRASK AVE, CA 92843."[8]

10.     The Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1332(d)(2) ("CAFA"), because (a) there are 100 or more class members, (b) at least one Class member is a citizen of a state that is diverse from Defendant's citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

11.     The Court has personal jurisdiction because Defendant has consented to jurisdiction by registering to conduct business in this state; maintains sufficient contacts in New York; and otherwise intentionally avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its Class Devices in and from New York. Additionally, Defendant maintains a website that serves its U.S. customers, and ships its products "from our US, EU&other -sic- local warehouses." These elements render the exercise of jurisdiction by the Court proper and necessary as Xgimi is "at home" in New York.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the Class's claims occurred in this District.

**PARTIES**

**A.  Plaintiff Luiz C. Peck Garrido**

---

[8] Plaintiff recognizes that provided are two separate street addresses. Defendant's mailing address included in the California Secretary of State's website is "11568 TRASK AVE, GARDEN GROVE, CA 92843" which, on information and belief, is its principal address. https://bizfileonline.sos.ca.gov/search/business (last visited Feb. 20, 2024).

13.    Plaintiff Luiz C. Peck Garrido is a resident and citizen of Long Island, New York, and brings this action in his individual capacity and on behalf of all others similarly situated. Mr. Garrido purchased an Xgimi Horizon Pro 4K, on or around November 2022, for $1,275, directly from Xgimi's website, https://us.xgimi.com/. Following a settlement between Xgimi and its competitor, Epson, Xgimi agreed to revise the brightness rating for the Horizon Pro 4K. Xgimi's revision lowered the brightness rating, as well as the standard used for measurement, from 2200 ANSI lumens to 1500 ISO lumens.[9]

14.    Recognizing this discrepancy between the brightness rating that was advertised and the actual brightness of the Class Device, Plaintiff contacted Xgimi's customer service through a contact form on Defendant's website on or about October 2023 to express his disappointment and seek a resolution.

15.    Xgimi's customer service representative responded on or about October 21, 2023, explaining why the brightness measurement was changed from the ANSI standard to the ISO standard, but otherwise maintained that the performance of the Class Device remained unaffected.

16.    Plaintiff responded on or about October 24, 2023, again explaining that it was not the performance of the Class Device that was the issue, but rather the representation made by Defendant that induced him to buy the Class Device in the first place, namely its brightness rating. Even taking into account the conversion from the ANSI standard to the ISO standard, Plaintiff explained, the Class Device's brightness rating should have been higher, at 1760 ISO lumens. Instead, Xgimi revised the Class Device's brightness rating to 1500 ISO lumens,

---

[9] "The International Organization for Standardization (ISO) is a worldwide federation of national standards bodies[,]" with a "mission to promote the development of standardization and related activities in the world with a view to facilitating the international exchange of goods and services[.]" https://www.ansi.org/iso/us-representation-in-iso/introduction (last visited Feb. 20, 2024).

supporting Plaintiff's contention that Xgimi's initial representation of the Class Device's brightness rating was inaccurate.

17.    Defendant responded on the same day, October 24, 2023, and asked Plaintiff to provide his order number and serial number. Plaintiff promptly responded with the requested information.

18.    The next day, on October 25, 2023, Defendant responded by reiterating that the change in measurement standard from ANSI to ISO "is solely for the sake of measurement consistency does -*sic*- not have any impact on the performance of our products." In addition, Defendant refused to refund or replace Plaintiff's projector due to being outside of the 30-day return window.

19.    Plaintiff responded on November 4, 2023, and specifically cited Xgimi's settlement with Epson "that led to the correction in the lumens specifications for XGIMI projectors." Plaintiff Garrido proposed a solution: to pay the difference between his Horizon Pro projector, with the inaccurate and misleading lumens figures advertised at the time of purchase, and the Horizon Ultra, which has the lumens figures the Horizon Pro allegedly had at the time of purchase. Defendant has not responded since.

**B.  Defendant Xgimi Technology Incorporated**

20.    Upon information and belief, Defendant Xgimi Technology Incorporated is a Delaware corporation with a place of business in Sunnyvale, California. It sells, *inter alia*, projector products through online platforms, such as Amazon.com.

21.    This action seeks redress for Defendant's deliberate and unlawful misleading representations regarding the light output of its projectors. Defendant used false claims regarding the light output of its projectors in its product descriptions and advertising.

## FACTS

### A.  Portable Consumer Projectors

22.    While traditionally associated with movie theaters, projectors have become an increasingly common video display product for consumers used in home, business, and educational settings.

23.    Today, consumers use digital projectors in the same way as television or computer screens. Digital projectors receive video signals from external devices, such as computers, and "project" those signals onto a screen.

24.    Consumers can purchase projectors in a variety of sizes ranging from the size of a cell phone to larger, permanently-mounted projectors for home theaters.

25.    Within a particular projector category, such as portable consumer projectors, the quality and corresponding price of a specific projector is largely determined by its resolution and light output.

26.    Projector light output is measured and described in lumens. The brighter the projector, the higher the lumen rating, and, all else being equal, the more it will likely cost.

27.    The lumen rating for a projector is one of the most important and immediately recognizable projector features for consumers, and one that necessarily impacts consumer choice.

### B.  Defendant's False Advertising of its Projectors

28.    Defendant is a prominent player in the portable consumer projector market. Defendant sells and offers for sale projectors to consumers throughout the United States via various online commerce sites including, but not limited to, Amazon.com.

29.     Defendant sells its projectors under various models including, but not limited to, the following: Horizon Pro 4K, Horizon 1080P, Elfin, and Halo.

30.     On its Amazon.com products page, Defendant advertised the following brightness values for its projector models:



| | Elfin | Horizon Pro 4K | Horizon 1080P | Halo |
|---|---|---|---|---|
| Display Chip | DLP 0.33" DMD | DLP 0.47" DMD | DLP 0.47" DMD | DLP 0.33" DMD |
| Resolution | 1920 x 1080 (1080P) | 3840 x 2160 (4K) | 1920 x 1080 (1080P) | 1920 x 1080 (1080P) |
| Brightness | 800 ANSI Lumens | 2200 ANSI Lumens | 2200 ANSI Lumens | 800 ANSI Lumen |

31.     As shown above, Defendant utilized the ANSI standard for measuring the brightness of its projectors. The ANSI Standard establishes protocols for measuring and communicating important performance attributes of projectors – including how to measure and communicate lumens.

32.     Each of the above brightness values were prominently displayed in both the projectors' listing page titles as well as throughout the projectors' listing pages.

33.     Throughout each of its products' pages, Defendant touts the brightness performance of its projectors in both the product's title and throughout its description of the product's performance. For example, in its listing for its Horizon Pro 4K projector, it stated, "HORIZON Pro's super bright projection technology outshines the competition. . . HORIZON

Pro is the brightest projector in its class by nearly 30%, putting out a stellar 2200 ANSI Lumens. HORIZON Pro will consistently deliver high colors and super sharp images, even in bright environments."

34.    Recognizing the importance of brightness to consumers, Defendant made similar claims as to each of its projector models' brightness levels.

35.    In order to gain initial traction in the United States projector marketplace, Xgimi purposefully and deceptively inflated the brightness specifications of its projectors.

36.    Independent testing conducted by industry competitor Epson of the brightness of several of Defendant's projector models revealed that each Xgimi model tested significantly below its advertised brightness value.

37.    Defendant's purposeful inflation of the brightness specifications of its projectors has not gone unnoticed by consumers.

38.    As follows is product feedback from customers of Defendant questioning whether the projector's lumen value is accurate:

⭐☆☆☆☆ **You get what you pay for**
By J on September 2, 2021
UPDATES: After first day of use, the projector stop responding to the controller. Followed the instructions from the customer service team to restart, repair the controller, and even reboot the projector, but nothing works. It seems to me that this projector might be a defected item and they need to work on their quality control.
Between Epson EF12 and XGIMI Elfin, I chose XGIMI. Maybe my expectation was too high, but I have to say I got disappointed.
- 1080P picture quality seems okay but contrast ratio definitely not good enough. Picture seems washed out even in a dark room.
-Auto keystone correction is not accurate and it will keep correcting for no reason. Manual correction is the only way you can rely on with this device which makes the auto correction useless. Not sure if the auto correction function is defected or not.
-Brightness seems okay but I doubt if it has 800ANSI.
-No complain about sound because I just connect my TV speaker via Bluetooth. Using Harman Kardon speakers is a very good gimmick.
-This projector is pretty quite while running and has a pretty good looking design.
If you're looking for a mini projector, XGIMI Elfin is a good option in its price range. However, I have to say that you can easily get a better projector with this price if you don't really care about the size. see less

⭐⭐⭐☆☆ **Brightness not up to snuff**
By Douglas C. on December 2, 2020
I purchased this to see how it compared to the Nebula Capsule II and found that I did like the colours better but the actual picture brightness did not add up to the manufacturers hype.
It was very easy to setup and operate but as I really wanted to see more clarity and brightness I returned the product and got my money back. Maybe next version.... see less



⭐⭐☆☆☆ 09/01/2020
AJ

**Good resolution, but not very bright**
The resolution and the features of this projector are great. However, it only works well if it is dark. We tried using it for kids during the day - inside, with all the curtains/blinds closed, and I couldn't even see the keyboard to search for anything. Their specification claims its 300 ansi lumen and reviews say it works well during the day with curtains closed, but that isn't the case with the unit we received. Even during evening, if you plan to use it for outdoors, you'll have to wait for it to be quite dark.

39.     As shown by the industry competitor's testing and the customer feedback above, Xgimi was significantly misrepresenting the lumens output of its projectors to consumers.

40.     As a result, purchasers and reasonable consumers of any of Xgimi's projectors were likely to be, and actually were, misled and deceived by Xgimi's literally false product labeling, descriptions, and advertisements.

41.     Consumers expected the represented product specifications to be accurate for Xgimi's projectors, as they based their purchasing decisions in large part on those representations. In fact, consumers, like Plaintiff, that purchased Defendant's projectors received projectors with drastically lower brightness outputs.

## FRAUDULENT CONCEALMENT ALLEGATIONS

42.     Absent discovery, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals at Xgimi responsible for disseminating false and misleading marketing materials regarding the Class Devices. Xgimi necessarily is in possession of all of this information. Plaintiff's claims arise out of Xgimi's fraudulent concealment of the true lumens capacity of the Class Devices, and Defendant's representations about the brightness capabilities of the Class Devices. To the extent that Plaintiff's claims arise from Xgimi's fraudulent concealment, there is no one document or communication, and no one interaction, upon which Plaintiff bases his claims.

43.     Plaintiff alleges that at all relevant times, including specifically at the time they purchased their respective Class Devices, Xgimi knew, or was reckless in not knowing, the actual lumens figures; Xgimi was under a duty to disclose the actual lumens figures based upon its exclusive knowledge of them, and its concealment of them; and Xgimi never disclosed the actual lumens figures to Plaintiff or the public until it was forced to do so by a competitor's lawsuit.

44.     Plaintiff makes the following specific fraud allegations with as much specificity as possible absent access to the information necessarily available only to Xgimi:

45.     *Who*: Xgimi actively concealed the true lumens figures from Plaintiff and Class members while simultaneously touting the brightness levels of the Class Devices, as alleged above. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals at Xgimi responsible for such decisions.

46.     *What*: Xgimi knew, or was negligent or reckless in not knowing, that the Class Devices do not possess the lumens figures Xgimi touted, as alleged above. Xgimi concealed the

actual lumens figures and made representations about the premium quality, brightness, and versatility, and other attributes of the Class Devices, as alleged above.

47.     *When*: Xgimi concealed material information regarding the actual lumens figures at all relevant times and made representations about the world-class quality and brightness levels of the Class Devices since at least November 2022, prior to Plaintiff's purchase, and/or at the subsequent introduction of certain models of the Class Devices to the market, continuing through the time of sale, and on an ongoing basis until the competitor's lawsuit forced Xgimi to revise its lumens figures, as alleged above. On information and belief, Defendant has not taken any action to inform consumers at large about the true nature of the lumens figures of the Class Devices. And when Plaintiff raised the discrepancy in lumens figures, even accounting for the conversion from the ANSI standard to the ISO standard, Xgimi denied a discrepancy existed.

48.     *Where*: Xgimi concealed material information regarding the true nature of the lumens figures in every communication it had with Plaintiff and Class members and made representations about the premium quality, brightness, and versatility of the Class Devices. Plaintiff is aware of no document, communication, or other place or thing, in which Xgimi disclosed the truth about the actual lumens figure to anyone outside of Xgimi. Such information was not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Xgimi's website, prior to the conclusion of the competitor's lawsuit.

49.     *How*: Xgimi concealed the actual lumens figures from Plaintiff and Class Members and made representations about the premium quality, brightness, and versatility of the Class Devices. Xgimi actively concealed the truth about the lumens figures of the Class Devices from Plaintiff and Class Members at all times, even though it knew that information about the

actual lumens figures would be important to a reasonable consumer. Xgimi promised in its marketing materials that Class Devices have qualities that they do not have.

50.    *Why*: Xgimi actively concealed material information about the actual lumens figures in the Class Devices for the purpose of inducing Plaintiff and Class Members to purchase and/or lease Class Devices, rather than purchasing or leasing competitors' projectors and made representations about the premium quality, brightness, and versatility of the Class Devices. Had Xgimi disclosed the truth, for example in its advertisements or other materials or communications, Plaintiff and Class Members (all reasonable consumers) would have been aware of it, and would not have bought or leased the Class Laptops or would have paid less for them.

51.    Xgimi's literally false and misleading product labeling, descriptions, and advertisements damaged the consuming public. Those false and misleading representations were designed to entice consumers to purchase Defendant's products over competitors' products.

52.    The natural, probable, and foreseeable result of Xgimi's wrongful conduct caused was to cause confusion, deception, and mistake in the consumer projector market as a whole, to deprive competitors of business and goodwill, to injure competitors' relationships with existing and prospective customers, and to divert sales of competitors' projectors.

53.    By means of example, after having a poor experience with Xgimi's projector with an improperly inflated lumen value of "2200 lumen," the consuming public is less likely to purchase a projector with a lumen rating of 2200 lumens as consumers will be unaware that Xgimi's "2200 lumen" projector is not representative of the performance of a true 2200 lumen projector. This caused irreparable harm to the entire portable projector marketplace.

## **CLASS ACTION ALLEGATIONS**

54.     Plaintiff brings this lawsuit on behalf of himself and all similarly situated individuals and entities, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(4). Specifically, the classes consist of:

**Nationwide Class**
All persons in the United States who purchased an Xgimi Projector,
prior to September 18, 2023.

**New York Subclass**
All persons in the state of New York who purchased an Xgimi Projector,
prior to September 18, 2023.

55.     Excluded from the Class are: (a) any Judge presiding over this action and members of their immediate families; (b) Defendant and their subsidiaries and affiliates; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

56.     **Numerosity**: The Class is comprised of thousands of owners of Class Devices, making joinder of all Class members impractical. Moreover, the Class is composed of an easily ascertainable, self-identifying set of individuals and entities that purchased Class Devices. The precise number of Class members can be ascertained through discovery, which includes Xgimi's records. The disposition of their claims through a class action will benefit both the parties and this Court.

57.     **Commonality**: There are questions of law and fact common to the Class that will materially advance the litigation, and these common questions predominate over any questions affecting only individual Class Members. Among the questions common to the Class are:

a.  Whether the Class Devices are defective;

b.  The origins and implementation of, and the justifications for, if any, Xgimi's policies and technology relating to the brightness misrepresentation and its manifestation in the Class Devices;

c.  When Xgimi became aware of the brightness misrepresentation in the Class Devices and how it responded to that knowledge;

d.  Whether Xgimi actively concealed and/or failed to notify consumers of the brightness misrepresentation in the Class Devices;

e.  Whether Defendant knew of these issues but failed to disclose the problems and their consequences to their customers;

f.  Whether a reasonable consumer would consider the Defect and its consequences to be material;

g.  Whether Defendant's conduct violates state consumer protection laws as asserted herein;

h.  Whether Defendant's sale of misrepresented Class Devices is unfair, false, misleading, or deceptive acts in the conduct of any trade or commerce;

i.  Whether Plaintiff and the other Class members overpaid for their Class Devices as a result of the brightness misrepresentation alleged herein;

j.  Whether Plaintiff and Class members would have purchased their Class Devices, and whether they would have paid a lower price for them, had they know that the brightness misrepresentation meant that the Class Devices were not as bright as advertised, and were incapable of reaching the brightness levels advertised at the time of purchase;

k.  Whether Plaintiff and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Class for replacement or repair of the Class Devices and bulb replacement; and (ii) the failure of consideration in connection with and/or difference

in value arising out of the variance between Class Devices as merchantable and as actually manufactured and sold possessing the brightness misrepresentation; and

l.  Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief.

58.  **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendant's conduct in designing, manufacturing, marketing, advertising, warranting, and selling the Class Devices. All of Plaintiff's claims are typical of the claims of the Class since Plaintiffs and all Class members were injured in the same manner by Defendant's uniform course of conduct described herein. Plaintiff and all Class members have the same claims against Defendant relating to the conduct alleged herein, and the same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class members. Plaintiffs and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendant's wrongful conduct as described herein. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

59.  **Adequate Representation**: Plaintiff will fairly and adequately protect the interests of the Class members and has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, inter alia, breach of warranties, product liability, product design defects, and state consumer fraud statutes.

60.  **Predominance**: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members.

61.    **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

## ESTOPPEL FROM PLEADING AND TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

62.    Defendant has possessed exclusive knowledge about the brightness misrepresentation, including from its customer complaint and warranty records, internal emails, reports, analyses, and assessment of product designers, that is unavailable to Plaintiff and the proposed Class members.

63.    Defendant is estopped from relying on any statutes of limitation or repose due to its acts of concealment. Defendant knew about the brightness misrepresentation for years but concealed it and/or failed to alert purchasers or potential purchasers. Defendant maintained exclusive control over information concerning the known, but non-public, brightness misrepresentation, and the number of Class Devices at issue; Plaintiff and Class members, therefore, could not reasonably have known about the brightness misrepresentation or the number of Class Devices affected. Defendant is estopped from relying on any statutes of limitations or repose that might otherwise apply to the claims asserted herein.

## CAUSES OF ACTION
### COUNT I
### DECEIT AND FRAUDULENT CONCEALMENT
**(On Behalf of the Nationwide Class, or, in the alternative, the New York Subclass)**

64.     Plaintiff repeats and realleges the above allegations as if fully set forth herein.

65.     Plaintiff asserts this claim on behalf of the Nationwide Class. In the alternative, this claim is brought on behalf of the New York Subclass.

66.     Defendant made false representations concerning the performance and quality of the Class Devices, and the quality of the Defendant's brand. Further, Defendant concealed and suppressed material facts concerning the performance and quality of the Class Devices, the quality of the Defendant's brand, the Class Devices' capabilities and benefits, and the actual lumens figures. Defendant knew, or in the exercise of reasonable diligence should have known, of the actual lumens figures and misrepresentations of the capabilities and benefits of the Class Devices, but failed to disclose these facts prior to or at the time it marketed Class Devices and sold them to consumers. Defendant engaged in this concealment in order to increase sales of its Class Devices and command a higher price for its Class Devices.

67.     Plaintiff and Class members had no reasonable way of knowing that Defendant's representations were false and misleading, or that Defendant had omitted to disclose highly important details relating to the Class Devices' performance and the actual lumens figures. Plaintiff and Class members did not and could not reasonably discover Defendant's deception on their own.

68.     Defendant had a duty to disclose the true performance of the Class Devices because the scheme and its details were known and accessible only to Defendant; Defendant had superior knowledge and access to the relevant facts; and Defendant knew these facts were neither known to, nor reasonably discoverable by, Plaintiff and the Class members.

69.    Defendant still has not made full and adequate disclosures and continues to defraud consumers by concealing material information regarding the true performance of Class Devices.

70.    Plaintiff and Class members were unaware of the omitted material facts and would not have purchased the Class Devices had they known of the facts Defendant suppressed. Plaintiff and Class members' actions in purchasing Class Devices were justified. Defendant was in exclusive control of the material facts and such facts were not reasonably known to the public, Plaintiff, or Class members.

71.    Plaintiff and Class Members relied to their detriment upon Defendant's representations, fraudulent misrepresentations, and material omissions regarding the quality of Class Devices, the Class Devices' effectiveness, and the Defect in deciding to purchase their devices.

72.    Plaintiff and Class members sustained damages as a direct and proximate result of Defendant's deceit and fraudulent concealment. Among other damages, Plaintiff and Class members did not receive the value of the premium price they paid for their Class Devices. Plaintiff and Class members would not have purchased Class Devices, or would have purchased them at a much lower price, had they known of the Class Devices' inability to reach the brightness levels advertised.

73.    Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights, to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

<u>**COUNT II**</u>
**COMMON LAW FRAUD – AFFIRMATIVE MISREPRESENTATION**
**(On Behalf of the Nationwide Class or, in the alternative, the New York Subclass)**

74.    Plaintiff repeats and realleges the allegations as if fully set forth herein.

75.    Plaintiff brings this claim on behalf of the Nationwide Class. In the alternative, this claim is brought on behalf of the New York Subclass, against Defendant.

76.    Defendant presented the Class Devices as capable of displaying images at their advertised lumens ratings.

77.    Defendant actively misrepresented the attributes and capabilities of the Class Devices by claiming that the projectors achieved brightness levels that they in fact could not.

78.    Indeed, in its advertisements, Xgimi claimed that the Horizon Pro 4K achieved 2200 ANSI lumens; that the Horizon 1080P achieved 2200 ANSI lumens; that the Halo achieved 800 ANSI lumens; and the Elfin achieved 800 ANSI lumens.

79.    Xgimi further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each projector, that the Class Devices it was selling had no significant defects and would perform and operate properly, including that it was capable of achieving the advertised lumens ratings.

80.    Xgimi knew that these representations were false when made.

81.    Defendant also claimed that the Class Devices were capable of providing clear images amid ambient light, or could be used in settings appropriate for the advertised lumens ratings.

82.    But the Class Devices purchased or financed by Plaintiff and Class Members did not, in fact, and could not, display images at their advertised lumens ratings because the actual lumens ratings the Class Devices could achieve were much lower than advertised.

83.    Xgimi broadcasted the lumens ratings of the Class Devices with the intent that members of the general public rely on Defendant's representations in making their purchases.

84.    A reasonable consumer would have done just that, expecting that they would in fact be able to use the Class Devices in settings appropriate for the advertised lumens ratings.

85.    Plaintiff and Class Members relied on Xgimi's affirmative misrepresentations regarding the lumens rating and usability of the Class Devices when deciding to purchase or finance the Class Devices. Had they known the true nature of the Class Devices, they would not have purchased or financed the Class Devices, or would have paid less for them. Plaintiff and Class Members were therefore fraudulently induced to purchase or finance the Class Devices with the misrepresentations alleged herein, and the resulting harms.

86.    To the extent that Xgimi's conduct was willful, oppressive, or malicious, Plaintiff and Class Members are entitled to an award of punitive damages.

## COUNT III
## BREACH OF EXPRESS WARRANTY
**(On Behalf of the Nationwide Class or, in the alternative, the New York Subclass)**

87.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

88.    Plaintiff brings this claim on behalf of the Nationwide Class. In the alternative, this claim is brought on behalf of the New York Subclass against Defendant.

89.    Defendant breached its express warranty by:

a.   Selling Plaintiff and Class members Class Devices that were unable to reach their advertised brightness levels;

b.   Selling Plaintiff and Class members Class Devices containing defective materials responsible for the actual lumens figures, which caused the Class Devices to fail to function properly; and

c. Failing to adequately repair or replace Class Devices affected by the actual lumens figures.

90.    Defendant did not furnish an effective remedy to Plaintiff and Class members. Despite opportunities to honor the promises in its express warranty, Defendant failed to provide Plaintiff and Class members with conforming Class Devices free of defects and failed to repair the Class Devices to make them conform to the representations made at the time of sale.

91.    Plaintiff and Class members experienced the Defect within the warranty period. In breach of its express warranty, Defendant failed to inform Plaintiff and Class members that the Class Devices contained defective materials and workmanship and failed to replace or repair the defective Class Devices.

92.    Defendant breached its express warranty that promised to replace or repair and correct manufacturing, materials or workmanship defects, and to provide Class Devices conforming to the warranty. To date, Defendant has not replaced nor repaired or adjusted the Class Devices, and has been unable to repair or adjust the actual lumens figures in the Class Devices.

93.    Through advertisements, public statements, and other statements disseminated through print and online media, Defendant expressly warranted the brightness attributes and qualities of the Class Devices by representation as detailed above.

94.    Class members were exposed to and relied on the foregoing statements when they decided to buy the Class Devices. Accordingly, Defendant's express warranties formed part of the basis of the bargain that was reached when Plaintiff and Class members purchased their Class Devices.

95.     Defendant breached these express warranties because the Class Devices did not, in fact, have the brightness levels that Defendant advertised. Defendant failed to adequately repair or replace Plaintiff's and Class members' Class Devices when they reported that they suffered from the actual lumens figures during the warranty period. Despite reasonable opportunities to honor the promises in their express warranties, Defendant failed to provide Plaintiff and Class members with conforming, non-defective Class Devices.

96.     Defendant received timely notice of the breaches experienced by Plaintiff and Class members. Defendant had exclusive knowledge of the actual lumens figures before the Class Devices were sold. Defendant also received notice of the actual lumens figures by the large volume of complaints lodged by consumers about the actual lumens figures shortly after the product was publicly sold. These complaints were received directly from consumers as well as from vendors who sold the Class Devices who received the complaints and relayed them to Defendant.

97.     Plaintiff and Class members used their Class Devices in a manner consistent with the Class Devices' operating instructions. Plaintiff and Class members performed their duties under the terms of the foregoing express warranties or have been excused from such performance as a result of Defendant's conduct described herein.

98.     Any attempt by Defendant to disclaim or limit their express warranties vis-à-vis consumers would be inappropriate under these circumstances. Any such asserted limitation is unconscionable and unenforceable because Defendant knowingly sold a defective product without informing consumers and because Defendant failed to honor its express promises.

99.     As a direct and proximate result of Defendant's breaches of express warranty, Plaintiff and Class members have suffered economic damages, including costly repairs, loss of

use, replacement costs, substantial loss in value and resale value of the Class Devices, and other harm.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of the Nationwide Class or, in the alternative, the New York Subclass)

100.    Plaintiff repeats and realleges the allegations above as if fully set forth herein.

101.    Plaintiff asserts this claim on behalf of the Nationwide Class. In the alternative, this claim is brought on behalf of the New York Subclass.

102.    Defendant is a "merchant" as defined under the U.C.C. and by the New York state statute under which Plaintiff alternatively asserts this claim.

103.    The Class Devices are "goods" as defined under the U.C.C. and by the equivalent state provisions of the UCC, including NY UCC § 2-314.

104.    Defendant impliedly warranted that the Class Devices were of a merchantable quality. The law implies a warranty that the Class Devices were merchantable in the relevant transactions. The Class Devices, when sold and at all times thereafter, were not in merchantable condition due to the Defect and other conditions as alleged above and are not fit for the ordinary purpose for which projectors of the advertised brightness are used, e.g., to view content at or below advertised brightness levels.

105.    At the point of sale, the Class Devices contained unseen manufacturing or materials defects whose manifestation renders the product ineffective. These defects in the Class Devices existed when the Class Devices left Defendant's possession and rendered them unfit for their ordinary and intended purpose. At all relevant times, including when the Class Devices entered the stream of commerce and were purchased by Plaintiff and Class members, the Class Devices were defective and not capable of functioning as advertised.

106.    Defendant breached the implied warranty of merchantability because the Class Devices are not of a merchantable quality, but instead contained inaccurate lumens figures. Had Plaintiff and Class member known of the actual lumens figures, they would not have purchased their Class Devices, or would have paid less for them.

107.    Plaintiffs and Class members' interactions with Xgimi suffice to create privity of contract between Plaintiff and Class members, on the one hand, and Defendant, on the other hand; however, privity of contract need not be established not is it required because Plaintiff and Class members are intended third party beneficiaries of contracts (including implied warranties) between Xgimi and the retailers who sell the Class Devices. Defendant's warranties were designed for the benefit of consumers who purchased Class Devices.

108.    As a direct and proximate result of the breach of said warranties, Plaintiff and Class members were injured and are entitled to damages.

109.    Defendant's attempts to disclaim or limit the implied warranty of merchantability vis-à-vis consumers are unconscionable and unenforceable. Specifically, Defendant's warranty limitations are unenforceable because Defendant knowingly sold a defective product without informing consumers about the actual lumens figures.

110.    The time limits contained in Defendant's warranty period were also unconscionable and inadequate to protect Plaintiff and members of the Class. Among other things, Plaintiff and members of the Class had no meaning choice in determining these time limitations, terms which unreasonably favor Defendant. A gross disparity in bargaining power existed between Defendant and Class members, as only Defendant knew or should have known that the Class Devices were defective at the time of sale and that the devices were not of merchantable quality.

111.    Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

112.    Defendant was provided notice of these issues. Defendant had exclusive knowledge of the actual lumens figures before the Class Devices were sold. Defendant also received notice of the actual lumens figures by the large volume of complaints lodged by consumers about the actual lumens figures shortly after the product was publicly sold. These complaints were received directly from consumers as well as from vendors who sold the Class Devices who received the complaints and relayed them to Defendant.

113.    Defendant's breach of the implied warranty of merchantability damaged Plaintiff and Class members in an amount to be determined at trial.

**COUNT V**
**BREACH OF THE IMPLIED WARRANTY OF FITNESS**
**FOR A PARTICULAR PURPOSE**
**(On Behalf of the Nationwide Class or, in the alternative, the New York Subclass)**

114.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

115.    Plaintiff asserts this claim on behalf of the Class. In the alternative, this claim is brought on behalf of the New York Subclass.

116.    Defendant manufactured, supplied, and sold its Class Devices with an implied warranty that they were fit for the particular purpose of displaying clear images with a lumens rating of 2200 ANSI lumens.

117.    Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the warranty.

118.    Defendant's Class Devices were not fit for the particular purpose of displaying clear images comparable to other projectors with equal lumens ratings as Defendant advertised.

119.    The Plaintiff in this case reasonably relied on Defendant's representations that its Class Devices displayed images at the advertised lumens rating.

120.    Defendant's breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

121.    Defendant's conduct, as described above, was egregious. Defendant deceived consumers and purchasers of its Class Devices, including Plaintiff, with the knowledge of its inflated lumens ratings and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting public. As such, Defendant's outrageous conduct warrants an award of punitive damages.

122.    Plaintiff therefore demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VI
## VIOLATIONS OF THE MAGNUSSON-MOSS WARRANTY ACT, 15 U.S.C. §§ 2301 *et seq*. ("MMWA")

123.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

124.    Plaintiff asserts this claim on behalf of the Class. In the alternative, this claim is brought on behalf of the New York Subclass.

125.    Plaintiff and Class members are 'consumers" within the meaning of the MMWA. 15 U.S.C. § 2301(3).

126.    The Class Devices are "consumer products" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

127.    Xgimi is a "supplier" and "warrantor" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

128.    Defendant's express warranties are written warranties within the meaning of Section 2301(6) of the MMWA. The Class Devices' implied warranties are accounted for under Section 2301(7) of the MMWA. Defendant cannot disclaim implied warranties under the MMWA because Defendant knowingly sold a defective product without informing consumers about the defects.

129.    As set forth herein, Xgimi breached its warranties with Plaintiff and Class members. Additionally, 15 U.S.C. § 2304(d) provides in pertinent part:

[T]he warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted consumer product. . . . [I]f any incidental expenses are incurred because the remedy is no made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor. *Id.*

130.    The Class Devices share a common defect in that they are unable to output light at the brightness levels advertised and otherwise fail to satisfy Defendant's advertising claims.

131.    Despite notice by Plaintiff and the Class to Xgimi of the defective nature of the Class Devices, Xgimi did not replace or repair the defective Class Devices. Instead, the costs of the inaccurate lumens figures were borne by consumers.

132.    As a direct and proximate result of Xgimi's breach of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and Class members have suffered damages in an amount to be proven at trial.

133.    The Plaintiff and the other Class members would suffer economic hardship if they returned their Class Devices but did not receive the return of all payments made by them. Because Xgimi is refusing to acknowledge any revocation of acceptance and immediately return any payments made, Plaintiff and the other Class members have not reaccepted their Class Devices by retaining them.

134.    The amount in controversy for each Plaintiff and Class members' individual claims meets or exceeds the sum of $25. The total amount in controversy of this action in sum exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

135.    Plaintiff and Class members are entitled to recover damages as a result of Defendant's breach of warranties.

136.    Plaintiff and Class members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

### COUNT VII
**Unfair and Deceptive Trade Practices in Violation of**
**N.Y. Gen. Bus. Law § 349, *et seq*.**
**(On Behalf of Plaintiff and the New York Subclass)**

137.    Plaintiff, individually and on behalf of the New York Subclass, repeats and realleges the above allegations as if fully set forth herein.

138.    Defendant's practices, acts, policies, and course of conduct, including its omissions, as described above, were intended to induce, and did induce, Plaintiff and New York Class members to purchase the above-mentioned defective Class Devices.

139.    Defendant sold the Class Devices knowingly concealing that they contained the inaccurate lumens figures alleged herein.

140.    Defendant's acts are and were deceptive acts or practices, likely to mislead a reasonable consumer into purchasing an Xgimi Projector. Defendant's aforementioned deceptive acts and practices are material, in part, because they concern an essential facet of the Xgimi's functionality. The sale and distribution of the Class Devices in New York was a consumer-oriented act and thereby falls under the New York deceptive acts and practices statute, N.Y. Gen. Bus. Law § 349, *et seq*.

141.    Defendant's practices, acts, policies, and course of conduct violated Gen. Bus. Law § 349, *et seq*.

142.    At the time of sale, Defendant knowingly misrepresented and intentionally omitted and concealed material information regarding the Class Devices by failing to disclose to Plaintiff and New York Class members the fact that the Class Devices' brightness levels are much lower than advertised, that as a result of such defect, the Class Devices emit images that are significantly less viewable than if they were emitted at the brightness levels advertised, and that the Class Devices are in fact incapable of outputting images at the brightness levels advertised. This concealed or omitted information is the type of information upon which a consumer would be expected to rely on, and which Plaintiff relied on, when deciding whether to purchase, or how much to pay for, the Class Devices.

143.    Thereafter, Defendant failed to disclose the actual lumens figures to Plaintiff and New York Subclass members either through warnings or recall notices and/or actively concealed from them the fact that the Class Devices' brightness levels were not as advertised, despite the

fact that the company knew of the actual lumens figures at least since the time of manufacturing, and at least at the point where Plaintiff made his purchase of the Class Devices.

144.    Defendant forced Plaintiff and/or New York Subclass members to expend time and/or sums of money at its authorized repair centers and/or third-party repair centers to repair and/or replace bulbs or other components to reach the advertised brightness levels, even though Defendant had prior knowledge of the actual lumens figures at the time of purchase.

145.    Defendant also engaged in materially misleading deceptive acts and practices by advertising and selling a limited warranty while knowing that significant portions of the damages resulting from the known, but concealed, actual lumens figures would not be revealed to the consumer until after coverage expired thereunder.

146.    Additionally, Defendant, in administering the limited warranty, engaged in materially misleading deceptive acts and practices by replacing defective Class Devices with the same defective Class Devices.

147.    Furthermore, Defendant engaged in materially misleading and deceptive acts by continuing to sell the Class Devices to the consuming public and to represent that these Class Devices were in good working order, merchantable, and not defective, despite Defendant's knowledge that the projectors would not perform as intended, represented, and warranted and that the above-described actual lumens figures would cause purchasers to incur significant out-of-pocket costs and expenses, chiefly in inflated prices commensurate with the advertised, and false, brightness levels.

148.    This conduct is and was deceptive and false and constitutes an unconscionable, unfair, and deceptive act or practice in that Defendant has, through knowing, intentional, and material omissions, concealed the actual lumens figures.

149.    By making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts and breached its duty not to do so.

## COUNT VIII
## UNJUST ENRICHMENT

150.    Plaintiff repeats and realleges the above allegations as if fully set forth herein.

151.    Plaintiff asserts this claim on behalf of the Class. In the alternative, this claim is brought on behalf of the New York Subclass.

152.    Plaintiff and Class Members have conferred a benefit on Defendant by purchasing their Class Devices.

153.    The Class Devices purchased by Plaintiff and the Class members did not provide the promised performance and instead contained a uniform defect.

154.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' Class Devices and out-of-pocket repair and bulb replacement costs. Retention of such revenues under these circumstances is unjust and inequitable because of the actual lumens figures which has caused injury to Plaintiff and the Class by depriving them of Class Devices that are capable of effectively outputting advertised brightness levels. Defendant's actions caused further injuries to Plaintiff and the Class because they would not have purchased their Class Devices or would have paid less for them if the true characteristics of the devices had been known at the time of purchase.

155.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and the Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

a.  For an order certifying the proposed class and subclasses and appointing Plaintiff and their counsel to represent the class and subclasses;

b.  For an order awarding Plaintiff and Class members actual, statutory, punitive, and/or any other form of damages provided by and pursuant to the statutes cited above;

c.  For an order awarding Plaintiff and Class members restitution, disgorgement, and/or other equitable relief provided by and pursuant to the statutes cited above or as the Court deems proper;

d.  For an order or orders requiring Defendant to adequately disclose and remediate the actual lumens figures;

e.  For an order awarding Plaintiff and the Class members pre-judgment and post-judgment interest;

f.  For an order awarding Plaintiff and Class members treble damages, other enhanced damages and attorneys' fees as provided for under the statutes cited above and related statutes;

g.  For an order awarding Plaintiff and the Class members reasonable attorneys' fees and costs of suit, including expert witness fees;

h.  For an order awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: June 18th, 2024.                    **MIGLIACCIO & RATHOD LLP**

*/s/ Nicholas A. Migliaccio*
Nicholas A. Migliaccio
Jason S. Rathod
**Migliaccio & Rathod LLP**
412 H St. NE, Suite 302
Washington, D.C. 20002
Tel: (202) 470-3520
Fax: (202) 800-2730
nmigliaccio@classlawdc.com
jrathod@classlawdc.com