# NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
_____

Nº 24-CV-04290 (RER) (CLP)
_____

LUIZ C. PECK GARRIDO

VERSUS

XGIMI TECHNOLOGY INCORPORATED
_____

**MEMORANDUM & ORDER**
_____

**RAMÓN E. REYES, JR., District Judge:**

This is a purported class action on behalf of consumers who purchased defendant's home projectors and other similar devices. Plaintiff claims defendant advertised these products on its website and elsewhere with intentionally inflated brightness ratings to deceive consumers and induce them to purchase these products at a premium. Defendant has moved to dismiss the amended complaint for failure to state a claim, lack of subject matter jurisdiction, and lack of personal jurisdiction. After carefully reviewing the record, and for the reasons set forth herein, the motion to dismiss is granted in part and denied in part.

## BACKGROUND[1]

### I.    Factual Background

In November 2022, plaintiff Luiz C. Peck Garrido ("Plaintiff" or "Peck Garrido"), a resident of Long Island, New York, purchased an Xgimi Horizon Pro 4K home theater projector directly from the website of defendant Xgimi Technology Incorporated ("Defendant" or "Xgimi") for $1,275. (ECF No. 15 ("Am. Compl.") ¶ 15). In September 2023, Xgimi reached a settlement with its competitor Epson ("Epson Settlement"), requiring Xgimi to reduce the advertised brightness rating for the Horizon 4K Pro. (*Id.*) Simultaneously with the lowered brightness rating, Xgimi switched its measurement standard from ANSI lumens to ISO lumens, which resulted in the Horizon Pro 4K's rated brightness changing from 2,200 ANSI lumens to 1,500 ISO lumens. (*Id.*) In or about October 2023, Plaintiff contacted Defendant's customer service to complain about the lowered brightness rating. (*Id.* ¶ 16). On or about October 21, 2023, Xgimi customer service responded that despite the switch in standards, the performance of the device was unaffected. (*Id.* ¶ 18). Peck Garrido responded on October 24, 2023, explaining that "it was not the performance of the [projector] that was the issue, but rather the

---

[1] The Court acknowledges and offers its gratitude to Daniel Ruderman, who served as a judicial intern during his third year at St. John's School of Law, for his assistance in researching and drafting this memorandum and order.

representation made by Defendant that induced him to buy [the projector] in the first place, namely its brightness rating." (*Id.*) Plaintiff explained to Defendant's customer service that 2,200 ANSI lumens should convert to 1,760 ISO lumens, and thus the new 1,500 ISO lumens rating indicates that the old 2,200 ANSI lumens rating was inflated. (*Id.*) However, Defendant refused to refund or replace the projector because the 30-day return window had expired. (*Id.* ¶ 20).

On November 4, 2023, Peck Garrido proposed that he pay the difference between the cost of the Horizon Pro 4K and the Horizon Ultra, which has the brightness rating that the Horizon 4K purportedly had at the time of Plaintiff's purchase. (*Id.* ¶ 21). Defendant did not reply to this proposal. (*Id.*) Peck Garrido retained an expert, an adjunct professor in mechanical engineering at California Polytechnic State University, to test three of the four putative class devices. Plaintiff's expert alleges that the brightness levels of these devices were between 20 and 25 percent lower than initially advertised. (*Id.* ¶¶ 6, 39). However, Peck Garrido could not find the Halo model for testing as it had been discontinued. (*Id.* ¶¶ 6, 40).

II.    Procedural History

On June 18, 2024, Plaintiff filed a Rule 23 class action complaint on behalf of himself and all others similarly situated. (ECF No. 1). He amended

the complaint on November 21, 2024, adding sections on expert witness testing of three Xgimi projectors and detailing the Epson Settlement. (ECF No. 15, Am. Compl. ¶¶ 39–46, 30–38). Peck Garrido alleges Defendant purposefully deceived consumers by inflating the brightness figures of its home projectors to gain traction in the United States market, including but not limited to the (1) Horizon Pro 4k, (2) Horizon 1080P, (3) Elfin, and (4) Halo models. (*Id.* ¶¶ 1–2, 4). Plaintiff asserts jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)). (*Id.* ¶ 12). Peck Garrido claims that independent testing by Epson, a market leader in home projectors, and feedback from customers reflect that Defendant knew that its projectors output was significantly below the advertised brightness. (*Id.* ¶¶ 55–59, 81). Plaintiff raises eight claims against Defendant on behalf of a nationwide class and New York subclass consisting of all persons who purchased a Xgimi Projector prior to September 18, 2023: (1) Deceit and Fraudulent Concealment (Count I), (2) Common Law Fraud via Affirmative Misrepresentation (Count II), (3) Breach of Express Warranty (Count III), (4) Breach of the Implied Warranty of Merchantability (Count IV), (5) Breach of the Implied Warranty of Fitness for a Particular Purpose (Count V), (6) violations of the Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* ("MMWA") (Count VI), and (7) Unfair and Deceptive Trade Practices in

Violation of N.Y. Gen. Bus. Law § 349, *et seq.* ("NYGBL") (on behalf of Plaintiff and New York subclass only) (Count VII), and (8) unjust enrichment (Count VIII). (Am. Compl. ¶¶ 61–176).

On January 9, 2025, Defendant moved to dismiss the amended complaint pursuant to Rules 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure (ECF No. 19-1 ("Def.'s Mem.")). Defendant argues: (1) Peck Garrido's fraud claims fail for lack of pleading reliance, specific false statements, or fraudulent intent (*Id.* at 13–16); (2) Peck Garrido failed to plead causation between alleged misrepresentations and his injury under NYGBL § 349 (*Id.* at 16–17); (3) Peck Garrido has no valid claim regarding the Halo model since he did not purchase and test one (*Id.* at 18–19); (4) Peck Garrido's breach of express warranty claims fail because he did not provide timely, individualized notice (*Id.* at 19–20); (5) Peck Garrido's implied warranty of merchantability and fitness for a particular purpose claims fail because he did not provide timely notice and alleged that "performance was not the issue" (*Id.* at 20–21); (6) Peck Garrido's MMWA claims fail because his state law claims fail (*Id.* at 22–24); (7) Peck Garrido's unjust enrichment claim is impermissibly duplicative (*Id.* at 24–25); (8) the court lacks jurisdiction over out-of-state nationwide class members, and specific or general jurisdiction over Defendant (*Id.* at 26–30); (9) Peck Garrido lacks

standing to assert claims for products he did not purchase (*Id.* at 30–31); and (10) Peck Garrido lacks standing for injunctive relief (*Id.* at 32–33). Plaintiff opposed ((ECF No. 19-2 ("Opp'n")), and Defendant replied (ECF No. 19-4 ("Reply")).

## **LEGAL STANDARD**

### I.    Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction must establish by a preponderance of the evidence that jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In evaluating a Rule 12(b)(1) motion to dismiss, a district judge must "accept[ ] all material factual allegations in the complaint as true," but should "refrain from drawing inferences in favor of the party asserting subject matter jurisdiction." *Gonzalez v. Inn on the Hudson LLC*, 20-CV-9196 (ER), 2022 WL 974384, at * 2 (S.D.N.Y. Mar. 30, 2022) (citation omitted).

### II.   Rule 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2), the plaintiff bears the

burden of establishing jurisdiction. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Id.*; *see also Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) ("[U]ntil discovery takes place, a plaintiff is required only to make a prima facie showing by pleadings and affidavits that jurisdiction exists."); *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) ("[A] complaint will survive a motion to dismiss for want of personal jurisdiction so long as its allegations, taken as true, are legally sufficient allegations of jurisdiction.") (citations and quotation marks omitted). The Court "constru[es] all pleadings and affidavits in the light most favorable to the plaintiff and resolv[es] all doubts in the plaintiff's favor." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).

###    III.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint based on "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing Fed. R. Civ. P. 8). In evaluating a motion to dismiss under Rule 12(b)(6), the court must accept all facts alleged in the complaint as true. *Id*. But it need not adopt "[t]hreadbare recitals of the elements of a cause of action" that are "supported by mere conclusory statements." *Id*.

## DISCUSSION[2]

### I.    Plaintiff Adequately Alleges Fraud (Counts I and II)

Under New York law, to adequately state a common law fraud claim a plaintiff must allege: "(1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 170 (2d Cir. 2015) (citing *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559, 883 N.Y.S.2d 147, 910 N.E.2d 976 (2009)). Although Federal Rule of Civil Procedure 9(b) contains a heightened particularity standard for pleading fraud claims, that standard is relaxed for fraudulent intent: "Malice, intent,

---

[2] The Court will address Defendant's arguments for dismissal in the order in which they appear in Defendant's memorandum of law. The Court notes, however, that Plaintiff has withdrawn his claim under the Magnusson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.* ("MMWA") (Count VI). (Opp'n at 10 n.2). Therefore, the Court will not address Defendant's objections to that claim. Plaintiff's MMWA claims are dismissed.

knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Second Circuit has cautioned, however, that because "we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[] ... plaintiffs must allege *facts* that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Grp.*, 47 F.3d 47, 52 (2d Cir. 1995) (emphasis added)); *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197–98 (2d Cir. 2013). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *see also Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996). Here, Defendant argues that Plaintiff's fraud claims should be dismissed because Plaintiff fails to plead a "strong inference" of fraudulent intent. (Def.'s Mem. at 13–16).[3] The Court disagrees.

Peck Garrido alleges that Defendant's misrepresentations of lumens ratings were "done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights,

---

[3] Page numbers for the parties' briefs are to the ECF-generated PDF page numbers.

to enrich Defendant." (Am. Compl. ¶ 92). These, however, are merely conclusory allegations that cannot satisfy Plaintiff's burden to allege *facts* that plausibly support a strong inference of fraudulent intent**.** So too are Peck Garrido's allegations that Xgimi's false lumens ratings were advertised "to increase sales and market share" (*id.* ¶ 4), and to "gain initial traction in the United States projector marketplace" (*id.* ¶ 54). These conclusory allegations concern only generalized motives which could be imputed to any public corporate entity and are not sufficiently concrete for purposes of inferring fraudulent intent. *Kalnit v. Eichler*, 264 F.3d 131, 139-40 (2d Cir. 2001) (citing *Chill*, 101 F.3d at 268); *In re Frito-Lay N. Am., Inc.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013) (clarifying that conclusory allegations that a company has motive to increase profits "'pertain to virtually any company that manufactures and distributes goods'" and "do not suffice" to show motive to commit fraud); *see also Dorris v. Danone Waters of Am.*, No. 22 Civ. 8717 (NSR), 2024 WL 4792048, at *9 (S.D.N.Y. Nov. 14, 2024) ("[I]t is well-settled in this circuit that a defendant's self-interested desire to increase sales or profits is a general motive without concrete benefits and, is, therefore insufficient [to show fraudulent intent].") (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996)). Plaintiff's attempts to distinguish *In re Frito-Lay N. Am., Inc.*, 2013 WL 4647512, are

misplaced. Unlike *Frito-Lay*, Plaintiff here cites to no specific *factual* allegations to support his claim of fraudulent intent. (Opp'n at 19). Rather, Peck Garrido cites to conclusory allegations that lack any factual support whatsoever. (*Id.*)

However, contrary to Xgimi's arguments, Peck Garrido has alleged sufficient facts showing strong circumstantial evidence of Xgimi's conscious misbehavior or recklessness. (*Id.*) As discussed below, Plaintiff has sufficiently alleged that Defendant engaged in materially misleading consumer-oriented conduct in violation of New York GBL § 349. Peck Garrido has also alleged that Xgimi settled Epson's claims that it inflated its lumens ratings on the suspect products. (Am. Compl. ¶¶ 16, 18). It is entirely reasonable to infer misbehavior or at least recklessness from these facts and the others stated in the amended complaint.

Defendant also argues that Plaintiff's fraud claims should be dismissed for failure to plead reliance with particularity. (Def.'s Mem. at 16). The Court again disagrees. Peck Garrido adequately alleges reliance. (Opp'n at 20). Defendant's arguments to the contrary (Reply at 9–10), are rejected.

Accordingly, Defendant's motion to dismiss is denied in this regard.

II.    Plaintiff's New York GBL § 349 Claim
       (Count VII) Is Adequately Pleaded

N.Y. GBL section 349 prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York. "To successfully assert a claim under . . . [N.Y. GBL section 349] . . ., a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940 (2012)); *see also Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 43 (E.D.N.Y. 2008). Xgimi's only argument with respect to the sufficiency of Peck Garrido's section 349 claim is that he failed to adequately allege that he suffered an injury "as a result of" the alleged lumens misrepresentation on Xgimi's website, because he does not allege that he "saw any alleged misrepresentations prior to his purchase [of the Xgimi projector]." (Def.'s Mem. at 9). The Court disagrees. While Defendant cites to two district court cases and one state court case in which courts have dismissed plaintiffs' N.Y. GBL section 349 claims for failure to plead affirmatively that they saw the allegedly misleading advertisements before they purchased the defendants' products (Def.'s Mem. at 17; Reply at 10), those cases are of no help here for two independent reasons.

First, while the amended complaint is not an exemplar of clarity or precision, it is enough to properly allege—even if barely so—a claim under N.Y. GBL section 349. Peck Garrido alleges that Xgimi engaged in consumer-oriented conduct by advertising its products to the public, including on its website. (Am. Compl. ¶¶ 13–15; *see also* Opp'n at 10–11 nn.3–4). [4] Defendant does not dispute this. Plaintiff also alleges that Defendant's consumer-oriented conduct was materially misleading in that Defendant inflated the lumens ratings of its various devices, including on its website. (Am. Compl. ¶ 125). While Xgimi disputes that it misrepresented the lumens ratings of its various devices, it does not dispute that Peck Garrido *alleges* that it did so. Plaintiff also alleges that he and the class relied on Defendant's advertised inflated lumens ratings, including on Defendant's website, when they paid more for the products than they otherwise would have. (*Id.* ¶¶ 69, 90, 104, 113 140, 163). Notably, while reliance is not an element of a GBL section 349 claim, and Peck Garrido does not expressly allege that he saw the purported false lumens ratings on Xgimi's website before he purchased the Horizon Pro 4K projector, or say specifically when and where he saw the misleading brightness rating, it is reasonable to infer

---

[4] The Court considers Xgimi's website at the time of Peck Garrido's purported purchase to be incorporated by reference into the amended complaint. *See, e.g.*, *DeMarco v. Ben Krupinski Gen. Contractor, Inc.*, No. 12–CV–0573 (SJF)(ARL), 2014 WL 3696020, at *5 (E.D.N.Y. July 22, 2014) ("A court may take judicial notice of a website.") (quotation marks omitted).

on a motion to dismiss that he did see it on Xgimi's website: after all, he alleges that he purchased the projector from the website in part because the brightness rating. *See Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F.Supp.3d 357, 361 (E.D.N.Y. 2014) ("The reasonable inference to be drawn from such allegations is that Plaintiff saw the misleading statements and, as a result of such, purchased the Drive at issue. Accordingly, causation is sufficiently pled."); see also *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F.Supp.3d 467 (S.D.N.Y. 2014) (confirming that causation was sifficinetly pleaded when "[t]he reasonable inference to be drawn from these allegations [that Plaintiff was 'deceived and misled'] . . . is that Plaintiff saw the [company] website and Facebook page described previously in the Complaint, and was thus deceived into purchasing the products in question.").

Second, the legal premise of Defendant's argument—that to establish injury "as a result of" a defendant's materially misleading consumer-oriented statements, a plaintiff in a N.Y. GBL section 349 case *must always* allege that he saw the supposed materially misleading statements—is misplaced. It is well established that a plaintiff can prove injury and causation under GBL section 349 in at least one of two ways. *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 99 (S.D.N.Y. 2022), *vacated on other grounds*, *Passman*

*v. Peloton Interactive, Inc.*, No. 19 Civ. 11711 (LGS), 2025 WL 1284718 (S.D.N.Y. May 2, 2025). First, as Defendant suggests, a plaintiff can plead that she was exposed to a material deceptive act, and because of that deceptive act she purchased a product, and was harmed. *Id.* (citing *Rodriguez v. Hanesbrands Inc.*, 2018 WL 2078116, at *4–5 (E.D.N.Y. Feb. 20, 2018)), *adopted by* 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018). Second, a plaintiff can also plead that "the defendant's misleading or deceptive advertising caused a price premium, that the price premium was charged both to those who saw and relied upon the false or misleading representations and those who did not, and that, as a result of the price premium, plaintiff was charged a price he would not otherwise have been charged" but for the false or misleading representations. *Id.* at 100 (citing *Eidelman v. Sun Prods. Corp.*, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022)) (summary order). Aside from plausibly pleading the former, at least by reasonable inference, Peck Garrido has also plausibly alleged the latter.

Here, a reasonable jury could find that (1) Xgimi marketed their projector products with inflated lumens ratings, (2) these misrepresentations allowed Xgimi to charge a price premium for their products, and (3) Peck Garrido paid more for the products than he would have paid had Xgimi not made such misrepresentations, regardless of whether he knew that the lumens rating

were inflated. *See, e.g., In re Columbia Coll. Rankings Action*, No. 22-cv-5945 (PGG), 22-cv-6597 (PGG), 2024 WL 1312511, at *12 (S.D.N.Y. Mar. 26, 2024) (recognizing that plaintiffs properly pleaded a price premium injury where they alleged the university's misrepresentation of its ranking caused an unjustified tuition premium they would not have otherwise paid); *Fishon*, 620 F. Supp. 3d at 103; *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020); *Carovillano v. Sirius XM Radio Inc.*, 715 F.Supp.3d 562, 582 (S.D.N.Y. 2024); *In re AXA Equitable Life Ins. Co. COI Litig.*, No. 16 Civ. 740 (JMF), 2020 WL 4694172, at *10 n.7 (S.D.N.Y. Aug. 13, 2020); *cf. Sharpe v. A&W Concentrate Co.*, 19 Civ. 768 (BMC), 2021 WL 3721392, at *4 (E.D.N.Y. July 23, 2021) (rejecting argument that GBL section 349 consumers must have been personally exposed to alleged misrepresentation as "another attempt to sneak in reliance"); *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 266 (E.D.N.Y. 2019) ("[W]here reliance is not at issue, the individual reason for purchasing a product becomes irrelevant and subsumed under the reasonable consumer standard, *i.e.*, whether the deception could likely have misled someone, and not, whether it in fact did.").

Plaintiff's N.Y. GBL section 349 claim is sufficiently pleaded, and therefore Defendant's motion to dismiss is denied in this respect.

III.    Plaintiff's Claims Related to the
        Halo Projector Are Adequately Pleaded

Defendant argues that because Plaintiff did not test the "Halo model,"
he has not provided *any evidence* of the falsity of the Halo model's initial
lumens ratings, and "[a]s such, there are *no plausible allegations of falsity*
for this device and all claims with respect to the Halo model should be
dismissed." (Def.'s Mem. at 18) (emphasis added). Defendant's arguments
are untenable.

First, at the pleading stage, a plaintiff need not provide *evidence*, but
only *plausible allegations*. *Cabrera v. CBS Corp.*, No. 17-CV-6011 (CM),
2018 WL 1225260, at *3 (S.D.N.Y. Feb. 26, 2018). The plausibility of a
plaintiff's allegations is not measured by whether she provides evidence, but
whether she alleges facts to support her allegations. *Id.* Xgimi's argument is
rejected in this regard.

Second, and regardless of any evidence or lack thereof, Peck Garrido
sufficiently *alleges* that Xgimi's original lumens rating of the Halo projector
was false. Relying on the Epson Settlement, Plaintiff alleges that Defendant
agreed to reduce the lumens ratings of the Halo projector. (Am. Compl. ¶ 33)
("Xgimi specifically agreed to change the lumens brightness specifications
for each of the four Class Devices . . . Halo (WK03A) reduced from 800
Lumens to 600 Lumens"). Defendant's contention that the Epson Settlement

17

constitutes mere "allegations *in a complaint* in another case [and] not fact" is wrong. (Def.'s Mem. at 18) (emphasis added). Notably, Xgimi does not contest that it entered into the Epson Settlement and agreed to lower the lumens rating of the Halo projector. Thus, the Epson Settlement is not merely an allegation "in a complaint in another case;" it is a factual allegation in this case. Whether that allegation is sufficient to carry the day for Plaintiff remains to be seen. What does not remain to be seen is whether Plaintiff has plausibly alleged that the original Halo lumens ratings were false. He has done so, and Defendant's motion to dismiss this claim is therefore denied.

IV.    Plaintiff Adequately Pleads Breach
       of Express Warranty (Count III)

To survive a motion to dismiss for failure to state a claim for breach of express warranty under New York law, a plaintiff must plausibly allege: "(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 527 (E.D.N.Y. 2017). In New York, a plaintiff must also give notice of the breach to the seller before he can recover under an express warranty claim. N.Y. U.C.C. § 2-607(3)(a); *Ham v. Lenovo (United States) Inc.*, 664 F. Supp. 3d

562, 582 (S.D.N.Y. 2023). Such notice must be specifically alleged but need only "alert defendant that the transaction was troublesome and [need not] include a claim for damages or threat of future litigation." *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 282 (E.D.N.Y. 2021) (citations and alterations omitted). Such notice, though, must be given before filing suit to retain a right to recovery. *Chung v. Igloo Prods. Corp.*, No. 20-CV-4926 (MKB), 2022 WL 2657350, at *13 (E.D.N.Y. July 8, 2022).

Plaintiff alleges—and Defendants do not appear to dispute—that Xgimi promised that the Horizon Pro 4K projector model he bought had a brightness rating of 2,200 ANSI lumens, which should convert to 1,760 ISO lumens, but its actual rating, as later changed by Xgimi, was 1,500 ISO lumens. (Am. Compl. ¶¶ 15, 18, 36). Such a description warranted a statement of fact about the projector. Plaintiff sufficiently alleges that such representation "induced him to buy [the projector] in the first place . . . ." (*Id.* ¶ 18). The express warranty was allegedly breached by the product not meeting the advertised brightness rating, and Plaintiff was allegedly injured by paying a price premium for a projector that did not meet its advertised performance. (*Id.* ¶ 91). These allegations satisfy the required elements for Plaintiff's breach of express warranty claim. Further, Plaintiff specifically alleges that in October 2023, before filing suit, he alerted Defendant that his

purchase was "troublesome" by submitting a complaint through a form on the customer service website. (*Id.* ¶ 16).

Defendants are correct that neither Plaintiff's post-suit September 16, 2024, letter, nor complaints and suits by other individuals would satisfy the statutory notice requirement.  (Def.'s Mem. at 20). However, Peck Garrido need not rely on either one, as his October 2023 customer service complaint suffices. Defendant attempts to discount this notice because Plaintiff "admitted at the time that 'it was not the performance of the [Projector] at issue,'" (Reply at 11), but Defendant omits the rest of Plaintiff's sentence: ". . . [the issue was] rather the representation made by Defendant that induced him to buy [the projector] in the first place, namely its brightness rating." (Am. Compl. ¶ 18). Plaintiff described the troublesome issue of the projector not meeting the promised brightness rating, and Defendant's customer service never responded. Defendant was sufficiently on notice of Plaintiff's issue with the product. The breach of express warranty claim therefore survives dismissal.

V.      Plaintiff's Implied Warrant of Merchantability and Fitness
         for Particular Purpose Claims (Counts IV and V) Fail

Under New York law, a plaintiff claiming a breach of implied warranty of merchantability "must plead that a merchant seller breached its 'guarantee

. . . that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection.'" *Ham*, 664 F. Supp. 3d at 582 (quoting *Wojcik v. Empire Forklift, Inc.*, 14 A.D.3d 63, 66 (3d Dep't 2004)); N.Y. U.C.C. § 2-314(2)(a), (c).

To prevail on a claim of breach of implied warranty of fitness for a particular purpose, a plaintiff must establish that "the seller had reason to know, at the time of contracting, the buyer's particular purpose for which the goods are required and that the buyer was justifiably relying upon the seller's skill and judgment to select and furnish suitable goods, and that the buyer did in fact rely on that skill." *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC,* 382 F. App'x 110, 112 (2d Cir. 2010). "The warranty of fitness for ordinary purposes is not a guarantee that the product will . . . fulfill a buyer's every expectation. . .. Rather, such a warranty provides for a minimal level of quality." *Ferracane v. United States*, No. 02-CV-1037 (SLT), 2007 WL 316570, at *8 (E.D.N.Y. Jan. 30, 2007) (citing *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 256 n.4 (1995)) (quotations and alterations omitted). Both types of claims require notice to a defendant. *Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 315 (S.D.N.Y. 2022).

Again, Defendants are incorrect that Plaintiff failed to notice them for the purposes of these claims. However, these causes of action otherwise

fail. Here, Defendant's focus on the first part of Plaintiff's October 2023 allegations about the projector is well placed; Plaintiff's issue "was not the performance of the [Projector]." (Def.'s Mem. at 21; Am. Compl. ¶18). While it is true that Plaintiff's projector does not put out the originally advertised lumens, at no point does he allege that it did not work for its "ordinary purpose" of projecting images to a "minimal level of quality". The projector's brightness in "moderate light conditions" may not have met Plaintiff's particular expectation or even fit the recommendations of "industry commentators" (Am. Compl. ¶ 3), but Plaintiff does not allege that it did not project visible images in these conditions. "Goods that are 'doing what they were supposed to do for as long as they were supposed to do it clearly live up to that 'minimum level of quality' which is all U.C.C. 2-314(2)(c) requires.'" *Ferracane*, 2007 WL 316570, at *8 (alterations and citations omitted). Plaintiff does not allege that the projectors did not meet these minimal criteria. Accordingly, the implied warranty claims are dismissed.

VI.     Plaintiff's Unjust Enrichment Claim (Count VII) Is Dismissed

Xgimi argues that Plaintiff's unjust enrichment claim must be dismissed because it is duplicative of his other causes of action and seeks identical relief. (Def.'s Mem. at 24). Defendant is correct. Under New York law, "unjust enrichment is not a catchall cause of action to be used when others fail. It is

available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff . . . An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see also Kurtz*, 321 F.R.D. at 554.

Plaintiff's unjust enrichment claim is based on the same allegations as set forth in support of the GBL claim, and Plaintiff has not shown that his unjust enrichment claim differs from his GBL claims nor that the alleged damages are distinct. Although Plaintiff's unjust enrichment claim does contain the allegation that Defendant was enriched by "out-of-pocket repair and bulb replacement costs," Plaintiff nowhere specifically claims that he paid for any repairs or bulb replacements on his Horizon Pro 4K. Thus, Plaintiff does not allege that he bestowed any benefit on Defendant, even if it is possible that some putative class members did so. (Am. Comp. ¶ 165). *Legurnic v. Ciccone*, 63 F. Supp. 3d 241, 248 (E.D.N.Y. 2014) ("If the Plaintiff fails to show that the Defendant received a benefit, there can be no liability for unjust enrichment.") Therefore, the Court dismisses Plaintiff's unjust enrichment claim as duplicative of his GBL claims. *See, e.g., In re Colum. Coll. Rankings*, 2024 WL 1312511, at *19 ("Courts in the Second Circuit have

consistently held that unjust enrichment claims that are duplicative of GBL claims should be dismissed.") (alterations and citations omitted)).

VII.    <u>Plaintiff's Request for Equitable Relief Will Continue</u>

Xgimi argues that Peck Garrido "cannot *maintain* equitable claims where he has an adequate remedy at law: damages" and "[t]he Court therefore has no power to award Plaintiff equitable relief for any of his claims." (Def.'s Mem. at 25–26) (emphasis added). While the Court ultimately may not award Plaintiff equitable relief at the conclusion of this litigation, that does not mean that the Court cannot maintain requests for such relief during its pendency. Indeed, the case upon which Defendant relies to support its argument, *Nasdaq, Inc. v. Exch. Traded Managers Grp., LLC*, 431 F.Supp.3d 176 (S.D.N.Y. 2019), (Def.'s Mem. at 26), illustrates this point. In that case, the district court precluded the plaintiff's request for equitable relief *after a 10-day bench trial on the merits* in which it found plaintiff was entitled to monetary damages. *Id.* at 182, 274. That decision in no way whatsoever stands for the proposition that requests for equitable relief should be dismissed on a 12(b)(6) motion. Xgimi's request is premature and is denied.

VIII.  <u>The Nationwide Class Claims Shall Proceed</u>

Relying principally on *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255 (2017), Xgimi argues that the nationwide class claims (Claims I–VI and VIII) should be dismissed because the Court lacks either general or specific personal jurisdiction with respect to those claims. (Def.'s Mem. at 26–30). Defendant's arguments proceed from a misunderstanding of both the facts and the law, and therefore, the motion to dismiss the class claims is denied in this respect.

First, the Court has specific personal jurisdiction over Xgimi with respect to Peck Garrido's claims. Although Defendant contests personal jurisdiction, New York's long-arm statute only requires that a defendant transacted business in New York and the cause of action arose from the transaction. *See* N.Y. C.P.L.R. § 302(a); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) ("[C]ourts have explained that section 302 'is a "single act statute" and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'") Since Plaintiff, who resides in Long Island, alleges that Defendant sold him the projector via its website and shipped it to him in New York, there is a

*prima facie* showing of specific personal jurisdiction. (Compl. ¶ 15); *Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 277 (2d Cir. 2024) ("The evidence demonstrates that Zembrka accepted orders with New York shipping addresses, sent confirmatory emails with New York shipping addresses containing commitments to ship to those New York addresses, and accepted payments from a customer with a New York address. We have little difficulty concluding that this activity constitutes transacting business within New York for purposes of jurisdiction under § 302(a)(1).") Therefore, this Court has specific jurisdiction over Defendant with respect to Peck Garrido's claims.

Second, although Xgimi argues that under *Bristol-Myers Squibb Co.* Plaintiff may not bring a nationwide putative class action, courts in the Second Circuit have continued to hold that "specific jurisdiction over a nationwide class action is assessed based on the citizenship of the named plaintiff, without inquiry into the citizenship of unnamed class members." *Hines v. Equifax Info. Servs. LLC*, No. 19-CV-6701 (RPK) (JAM), 2024 WL 4132333, at *2 (E.D.N.Y. Sept. 10, 2024). *Bristol-Myers* was not a Rule 23 class action, but a state-court mass action with over 600 named plaintiffs, most of whom resided outside the California forum. 582 U.S. at 259. As a putative class action, all that must be alleged for standing is that the named plaintiff (1) suffered an actual injury because of the conduct of the defendant,

and (2) "that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (citations and quotations omitted). Such is the case here.

Accordingly, Xgimi's objections to Plaintiff's standing to bring class claims or personal jurisdiction over it vis-à-vis the nationwide class are rejected. The nationwide class claims shall proceed.

VIII.   Plaintiff Has Article III Standing to Pursue Claims for The Products He Did Not Purchase

Citing to the fact that he purchased only one Xgimi product, Defendant argues that Peck Garrido lacks Article III standing to assert claims, including claims on behalf of a putative class, for the other three Xgimi products he did not purchase. (Def.'s Mem. at 30–31). The Court disagrees.

The Second Circuit has held that Article III standing is satisfied for each named defendant as long as there is "at least one named plaintiff who can assert a claim directly against that defendant." *NECA–IBEW*, 693 F.3d at 159 (internal quotation marks omitted); *see also, e.g., Weisblum v. Prophase Labs, Inc*., 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015)*; In re Frito–Lay N. Am., Inc. All Natural Litig.*, No. 12–MD–2413 (RRM)(RLM), 2013 WL 4647512, at

*11 (E.D.N.Y. Aug. 29, 2013) (quoting *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*, 504 F.3d 229, 241 (2d Cir. 2007)). There should be no dispute that this standard is met here— Peck Garrido alleges claims for at least one product he purchased directly from Xgimi based on inflated lumens representations—and therefore Plaintiff's claims on behalf of purchasers of other Xgimi products can move forward.

In arguing otherwise, Defendant relies heavily on the Second Circuit's unpublished summary order in *DiMuro v. Clinique Labs., LLC*, 572 Fed. Appx. 27 (2d Cir. 2014), (Def.'s Mem. at 31), which held that the plaintiffs could not bring class claims for products they did not purchase because the alleged misrepresentations were not "nearly identical" to those made about products the plaintiffs did purchase. 572 Fed. Appx at 29. *DiMuro*, however, could not and did not change Circuit law as expressed in *NECA–IBEW*. *See, e.g., Fossil Grp., Inc. v. Angel Seller LLC,* No. 20-CV-2441 (HG), 2022 WL 3655177, at *2 (E.D.N.Y. Aug. 25, 2022) ("[A] summary order ... does not have precedential effect.") (citing *Hoefer v. Bd. of Educ. of the Enlarged City Sch. Dist.*, 820 F.3d 58, 65 (2d Cir. 2016); *Bais Yaakov of Spring Valley v. Houghton Mifflin Harcourt Publishers, Inc.*, 36 F.Supp.3d 417, 421 n. 6 (S.D.N.Y. 2014) ("*DiMuro* merely reiterates the holding of *NECA–IBEW*.").

Moreover, even were Peck Garrido required to allege "nearly identical" misrepresentation across the four products, he has done so: The amended complaint clearly states that Xgimi misrepresented the lumens ratings of all four products (Am. Compl. ¶¶ 1–2, 4). While the allegedly misrepresented numerical ratings may not be identical, and while the four products may have different internal components, those differences are immaterial. Plaintiff's allegations about the four projector models involve the same lumens rating misrepresentations about substantially similar products. "Any specific concerns regarding the [products'] differences can be addressed at the class certification stage." *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 277 (E.D.N.Y. 2021) (citation omitted). But at the motion to dismiss stage, Plaintiff has adequately alleged that "the nature and content of the specific misrepresentation alleged" are sufficiently similar because the purchased and unpurchased projectors are all made by Xgimi for the purpose of projecting images and they were all sold and marketed on its website with allegedly inflated lumens ratings. *Id.* (citing *NECA-IBEW*, 693 F.3d at 162); *see also Ham*, 664 F. Supp. 3d at 578; *Rivera v. S.C. Johnson & Son, Inc.*, No. 20-CV-3588 (RA), 2021 WL 4392300, at *9 (S.D.N.Y. Sept. 24, 2021) (collecting cases); *Hart v. BHH*, LLC, No. 15CV4804, 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016).

IX.    Plaintiff's Claims for Injunctive Relief Are Dismissed

In addition to money damages and equitable relief, Plaintiff seeks an order enjoining "Defendant to adequately disclose and remediate the actual lumens figures" of its products in the future. (Am. Compl. at 38). Defendant argues that Plaintiff lacks standing to seek such injunctive relief due to a lack of any real and immediate threat of future injury. (Def.'s Mem. at 32). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). Plaintiff notes that he now knows the truth about the lumens figures of Defendant's projectors (Am. Compl. ¶¶ 16, 18), and nowhere alleges that he is in the market for another projector. Furthermore, Xgimi has already revised its lumens rating pursuant to the Epson Settlement that preceded this action. (*Id.* ¶ 18). Peck Garrido also does not appear to object to the dismissal of his request for injunctive relief in his opposition to Defendant's motion. Therefore, Plaintiff's request for injunctive relief in the form of disclosure and remediation is dismissed.

CONCLUSION

For the reasons set forth above, the Court grants in part and denies in part Defendant's motion to dismiss. Plaintiff maintains his fraud claims (Counts I and II) and breach of express warranty claim (Claim III) on behalf of himself and a nationwide class, and his N.Y. GBL section 349 claim (Claim VII) on behalf of himself and the New York subclass. Counts IV, V, VI and VIII are dismissed, as is Plaintiff's request for injunctive relief.

SO ORDERED.

/s/ Ramón E. Reyes, Jr.
RAMÓN E. REYES, JR.
United States District Judge

Dated: November 12, 2025
       Brooklyn, New York